OPINION
{¶ 1} Appellant-Mother Jeanette Earley and Appellant-Father Ron Calvert separately appeal the judgment entered in the Guernsey County Court of Common Pleas, Family Court Division, which terminated all parental rights, privileges and responsibilities of appellants with regard to their minor children and ordered that permanent custody of the minor children be granted to the Guernsey County Children Services Board [hereinafter CSB] so that they may be placed for adoption.
 {¶ 2} These appeals are expedited, and are being considered pursuant to App.R. 11.2(C). The relevant facts leading to this appeal are as follows.
 STATEMENT OF THE FACTS AND CASE {¶ 3} Appellants Ron Calvert and Jeanette Earley are the natural parents of Jimmy Calvert (DOB 2/12/91), Margaret Calvert (DOB 2/20/95) and Tracie Calvert (DOB 6/25/00)[hereinafter minor children].
 {¶ 4} Appellant-mother has a diagnosis of mild mental retardation with a full scale I.Q. between 55 and 56. (T. at 15, 17, 27). Appellant-father also has a diagnosis of mild mental retardation with a full scale I.Q. of 55 and also has a history of alcohol abuse. (T. at 50, 52, 55). Additionally, Appellant-father has been diagnosed with a personality disorder.
 {¶ 5} On December 5, 2003, the Guernsey County Juvenile Court signed an Entry finding probable case to believe that the minor children may be abused and neglected based on a telephone communication from a CSB worker.
 {¶ 6} On December 8, 2003, CSB filed a complaint in the Guernsey County Court of Common Pleas, Family Court Division, alleging that the children were neglected pursuant to R.C. 2151.03 and abused pursuant to R.C. 2151.031. A motion for temporary custody was also filed and the trial court held an emergency hearing. By Judgment Entry dated December 15, 2003, the trial court found that probable cause existed to find the children abused and neglected.
 {¶ 7} On January 13, 2004, a pretrial was held in this matter.
 {¶ 8} On January 26, 2004, Appellant-mother filed for custody.
 {¶ 9} On January 26, 2004, CSB filed an amended motion for temporary custody and an amended complaint alleging that the children were also dependent pursuant to R.C. 2151.04.
 {¶ 10} By Entry dated January 27, 2004, the trial court granted the motion for temporary custody.
 {¶ 11} On February 23, 2004, an adjudicatory and dispositional hearing was held wherein the parents admitted that the minor children were dependent. Temporary custody was continued with CSB.
 {¶ 12} On May 19, 2004, a further dispositional hearing and a hearing on the case plan was conducted.
 {¶ 13} On September 24, 2004, CSB filed a motion for permanent custody.
 {¶ 14} On December 6, 2004, the first half of a bifurcated permanent custody was held with the second half held on March 31, 2005.
 {¶ 15} By Entry filed April 13, 2005, the trial court issued a Judgment Entry which granted permanent custody to CSB.
 {¶ 16} On April 28, 2005, Appellant-mother filed a notice of appeal.
 {¶ 17} On April 29, 2005, CSB filed a Motion to Clarify the Journal Entry granting permanent custody.
 {¶ 18} On May 4, 2005, Appellant-father filed his notice of appeal.
 {¶ 19} On June 6, 2005, the trial court filed a judgment entry clarifying the earlier journal entry.
 {¶ 20} Thus, it is from this Judgment Entry that appellants now separately appeal, raising the following assignments of error:
 ASSIGNMENTS OF ERROR (APPELLANT-MOTHER, 05-CA-19) {¶ 21} "I. APPELLANT WAS DEPREIVED [SIC] OF HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WITH THE RESULT THAT HIGHLY PREJUDICIAL EVIDENCE WAS INTRODUCED AGAINST HER.
 {¶ 22} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW AND COMMITTED PLAIN ERROR BY ACCEPTING THE APPELLANT'S ADMISSION THAT THE CHILDREN WERE DEPENDENT CHILDREN WITHOUT ENSURING THAT THE MOTHER UNDERSTOOD THE NATURE OF THE ALLEGATIONS AND THE CONSEQUENCES OF HER ADMISSIONS AS REQUIRED BY JUV.R. 29(D).
 {¶ 23} "III. THE JUDGMENT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT GUERNSEY COUNTY CHILDREN SERVICES BOARD FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANTS' PARENTAL RIGHTS SHOULD BE TERMINATED."
 (APPELLANT-FATHER, 04-CA-20) {¶ 24} "I. THE COURT ERRED AS A MATTER OF LAW AND COMMITTED PLAIN ERROR BY ACCEPTING THE PARENTS' ADMISSIONS THAT THE CHILD WAS A DEPENDENT CHILD WITHOUT ENSURING THAT THE PARENTS UNDERSTOOD THE NATURE OF THE ALLEGATIONS AND THE CONSEQUENCES OF THEIR ADMISSIONS AS REQUIRED BY JUV.R. 29(D).
 {¶ 25} "II. THE TRIAL COURT'S FINDINGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; THE GUERNSEY COUNTY CHILDREN SERVICES BOARD FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANTS' PARENTAL RIGHTS SHOULD BE TERMINATED.
 {¶ 26} "III. THE TRIAL COURT ERRED IN FINDING THAT THE PARENTAL RIGHTS OF THE APPELLANT/PARENTS SHOULD BE TERMINATED BECAUSE THE PARENTS FAILED TO FULLY COMPLY WITH THE CASE PLAN."
 I. (05-19) {¶ 27} In the first assignment of error, Appellant-mother contends that she was deprived of the effective assistance of trial counsel. We disagree.
 {¶ 28} Specifically, Appellant-mother claims that her former counsel did not object to the trial court's alleged failure to follow the mandates of Juv.R. 29 to ensure that she understood the consequences of her admission to the dependency.
 {¶ 29} Upon review, we find that such admission was made at the February 23, 2004, hearing. As no appeal was taken from this hearing, this Court does not have jurisdiction to consider such assignment of error in that this appeal concerns only the March 31, 2005, judgment of the trial court granting permanent custody to the agency.
 {¶ 30} Appellant-mother's first assignment of error is overruled.
 II. (05-19) and I. (05-20) {¶ 31} In Appellant-mother's second and Appellant-father's first assignment of error, each alleges that the trial court erred in accepting the appellants' admissions as to dependency with ensuring that Appellants understood the allegations and the consequences of such admissions. We disagree.
 {¶ 32} Juvenile Rule 29(D), provides as follows:
 {¶ 33} "The Court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
 {¶ 34} "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 {¶ 35} "(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."
 {¶ 36} Upon review, for the same reason as stated in the preceding assignment of error, this Court finds that it does not have jurisdiction to consider Appellant-mother's second and Appellant-father's first assignment of error because such assignments again attempt to challenge the March 2, 2004, Journal Entry, and/or the admissions made at the February 23, 2004, hearing which is not the subject of this appeal.
 {¶ 37} Appellant-mother's second and Appellant-father's first assignment of error are overruled.
 III. (05-19) and II. (05-20) {¶ 38} In Appellant-mother's third and Appellant-father's second assignment of error, each alleges that the trial court's findings are against the manifest weight of the evidence.
 {¶ 39} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 40} Before a juvenile court can terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least twelve of the prior twenty-two months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. § 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. §2151.414(D). See R.C. § 2151.414(B)(1) and § 2151.414(B)(2); see, also,In re William S. (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738. Clear and convincing evidence is that which will cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established.Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 41} Revised Code § 2151.414(E) sets forth a list of sixteen predicate findings, one of which must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent; In re William S. (1996), 75 Ohio St.3d 95, 1996-Ohio-182,
syllabus. The statute also enumerates certain criteria for evaluating whether permanent custody with a children's services agency is in the child's best interests. R.C. § 2151.414(D)(1) through (4). All of the court's findings must be supported by clear and convincing evidence, R.C. § 2151.414(B), and will not be overturned as against the manifest weight of the evidence if the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. In re Forest S. (1995), 102 Ohio App.3d 338, 345,657 N.E.2d 307; Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 42} R.C. § 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows
 {¶ 43} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section § 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 44} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;
 {¶ 45} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code;
 {¶ 46} "(3) The parent committed any abuse as described in section2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03
of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 {¶ 47} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 48} "(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 {¶ 49} "(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05,2907.07, 2907.08, 2907.09, 2907.12, 2907.21, 2907.22, 2907.23, 2907.25,2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11,2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
 {¶ 50} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body;
 {¶ 51} "(9) . . .
 {¶ 52} "(10) The parent has abandoned the child;
 {¶ 53} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 54} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing;
 {¶ 55} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 {¶ 56} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect;
 {¶ 57} "(15) The parent has committed abuse as described in section2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
 {¶ 58} "(16) Any other factor the court considers relevant."
 {¶ 59} The trial court found that Appellant-mother had had parental rights terminated with respect to two other siblings of these children. R.C. 2151.414(E)(1).
 {¶ 60} Further evidence was presented that each of the appellants are mentally retarded with I.Q.'s of only 55 and that both parents suffered from alcohol problems and that appellant-father has a personality disorder. Appellant-father was also hospitalized from age 12 to 18.
 {¶ 61} R.C. § 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. § 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 62} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 63} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 64} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 65} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 66} "(5)Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 67} The trial court found that it was in the best interests of the child for permanent custody to be granted to CSB based on the following:
 {¶ 68} The trial court conducted an in camera interview of the two oldest children in which they expressed a preference for foster care and a belief that their parents would never change.
 {¶ 69} Additionally, the trial court found that the children are interacting and flourishing in foster care.
 {¶ 70} We find the evidence to be substantial and credible that it is in the children's best interest to be provided with a safe and stable home environment which can only be available through permanent custody.
 {¶ 71} Upon review, we find the trial court had clear and convincing evidence before it to grant appellee permanent custody of the children.
 {¶ 72} Appellant-mother's third and Appellant-father's second assignment of error are overruled.
 III. (05-20) {¶ 73} In Appellant-father's third assignment of error, he alleges that the trial court erred in finding that parental rights should be terminated because the parents failed to fully comply with the case plan. We disagree.
 {¶ 74} While preparation of a case plan is required by R.C. 2151.412(A) and the progress of the parents is measured in part by their completion of case plan goals, the case plan is not the only measure by which a court determines whether to grant a motion for permanent custody. Substantial compliance with a case plan, without more, does not entitle a parent to custody. In the Matter McKenzie, (Oct. 18, 1995), 9th Dist. No. 95CA0015, unreported, citing In re Watkins and Harris v. Harris (Aug. 30, 1995), 9th Dist. No. 17068, unreported. The main issue considered by the courts is "not whether the parent has substantially complied with the case plan, but whether the parent has substantially remedied the conditions that caused the child's removal." McKenzie at 4. Since the trial court is required to assess the best interest of the child when determining whether to grant a motion for permanent custody, it is entirely possible that a parent could complete all of his/her case plan goals and the trial court still appropriately terminate his/her parental rights.
 {¶ 75} As set forth above, the trial court terminated the parental rights in the case sub judice based on a number of the factors enumerated in R.C. 2151.414, not just the failure of Appellants to fully comply with their case plan.
 {¶ 76} Accordingly, we find that the trial court's award of permanent custody to CSB was not against the manifest weight of the evidence.
 {¶ 77} Appellant-father's third assignment of error is overruled.
 {¶ 78} The judgment of the Guernsey County Court of Common Pleas, Juvenile Division is affirmed.
Boggins, P.J., Wise, J., concurs, Edwards, J. concurs separately.